### THE MAJOR REYBOLD.

(District Court, E. D. Pennsylvania. October 25, 1901.)

#### No. 34.

COLLISION—LIABILITY OF CITY—RELATION OF MASTER AND SERVANT.

A municipal corporation is liable in a court of admiralty for a collision caused by the negligence of its servants in charge of a vessel of which it is owner, who were operating the same under the directions of the corporation; and it is immaterial whether the vessel was employed in a municipal service or under orders which were ultra vires, the relation of master and servant being sufficient to render the corporation responsible under the rule of respondeat superior.

In Admiralty. Suit in personam for collision. On final hearing.

Francis S. Laws and John F. Lewis, for libelant.

John L. Kinsey, Leonard Finletter, and Chester N. Farr, for respondent.

J. B. McPHERSON, District Judge. This suit was begun by a libel in personam, wherein damages for a collision are sought to be recovered against a municipal corporation.

The Major Reybold is a steamship plying upon the Delaware river between the city of Philadelphia and the town of Salem. Between 4 and 5 o'clock on the afternoon of September 8, 1899, she backed out into the stream towards the east shore from the north side of Arch street wharf, where she had been lying, intending to turn towards the south, and proceed upon a voyage to Salem. The battleship Indiana was anchored nearly opposite the wharf, and the Reybold backed as near to this vessel as it was prudent to go, and then reversed her engines for the purpose of stopping her way before turning down stream. She might, perhaps, have gone somewhat nearer to the Indiana, if it had not been for the approach of a revenue cutter that was coming down the river, and evidently intended to pass between the battleship and the Reybold. At, or shortly before, the stopping of the Reybold, Ice Boat No. 3, belonging to the city of Philadelphia, which was coming up the river not far below, in charge of employés of the city, blew two blasts of her whistle, signifying that she would pass between the bow of the Reybold and Arch street wharf. To this signal the Reybold answered with two blasts, thus giving assent to the ice boat's course, and thereupon remained at rest upon the water, save as the ebb tide may have moved her slightly. The ice boat had ample room to pass in safety, but apparently miscalculated the distance between the Reybold and herself, for the starboard guard of the ice boat struck the stem of the Reybold upon the port side, and thus inflicted

the injury complained of. The day was clear, and there was no obstruction to the view from either vessel.

These being the facts, the Reybold was not to blame, and the fault of the ice boat is clear; the remaining question being whether the city is liable for this negligence. The offending vessel was not being used as an ice boat at the time of the collision, and therefore no question arises concerning the city's liability for a collision that might be due to the fault of the boat while engaged in the duty of breaking ice in order to aid navigation. The principal defense is that the boat was being used by the city's permission for purposes that were not municipal, and that such permission was, therefore, an ultra vires act that can furnish no ground for recovery. It appeared from the evidence that a meeting of the Grand Army of the Republic was being held in the city at this time, and that upon the day in question a naval parade took place upon the Delaware river. In the preceding June the councils of the city passed the following resolution:

"Resolved, * * * that * * * authority is hereby granted for the use of the city ice-boats to participate in the celebration of Naval Day, Friday, September 6, 1899, during the thirty-third national encampment and reunion of the Grand Army of the Republic, to be held in this city commencing September 4, 1899, and that the department of public works be and is hereby authorized and instructed to do all that is necessary to carry this resolution into effect."

In pursuance of this resolution, ice boat No. 3 took part in the naval parade, and, the parade being over, and her passengers having been put ashore, she was on her way elsewhere at the time the collision took place. These are the facts upon which the city relies to support the legal position above stated, citing several decisions in the state courts, of which Smith v. City of Rochester, 76 N. Y. 506, may be taken as an example. In that case the city councils, desiring to take part in a celebration of the one hundredth anniversary of national independence, directed the fire department to assemble at midnight in front of the city hall, not for the purpose of extinguishing a fire, but in order to take part in a parade. While going to the place of meeting, one of the engines ran over the plaintiff, and injured him. The court decided that the city was not liable, saying:

"No reported case sustains the principle that when the common council of a municipal corporation exceed the powers conferred by the charter of the city they represent by using the property of the city, as was done in this case, for purposes not recognized by law, that the corporation is answerable for negligence in the management of such property. Such a rule would place in the hands of the members of the common council of a municipal corporation a power to create liabilities of the taxpayers, which is without any precedent or authority of law, and which might be liable to great abuse."

In reply to the respondent's position, it is, I think, only necessary to say that the supreme court of the United States, in Workman v. City of New York, 179 U. S. 552, 21 Sup. Ct. 212, 45 L. Ed. 314, has decided, in effect, that such a defense is not valid in the courts of admiralty of the United States. The court there holds that the legal decisions of a state court cannot, as a matter of authority, abrogate the maritime law, and that under the general maritime law,

where the relation of master and servant exists (as it did exist in the case now before the court), an owner of an offending vessel committing a maritime tort is responsible under the rule of respondeat superior, although the owner may be a municipal corporation. The case decides that a city is liable in a court of admiralty for the negligence of its servants operating a fire boat, although the boat was engaged in the duty of putting out a fire at the time the injury was done. The defense that the servants of the city were discharging one of its governmental functions, and therefore that the municipality was not liable for their negligent conduct, was not allowed to prevail, and the decision rests broadly upon the principle that the relation of master and servant existed, and that this is enough, in a court of admiralty, to make the master liable for the servant's default. The court say:

"By the general admiralty law of this country, subject to the exemption from process possessed by the national government, a ship, by whomsoever owned or navigated, is liable for an actionable injury resulting from the negligence of the master and crew of such vessel. The John G. Stevens (1898) 170 U. S. 113, 120, 18 Sup. Ct. 544, 42 L. Ed. 969, and cases cited page 122, 170 U. S., page 548, 18 Sup. Ct., and page 973, 42 L. Ed. A liability of the owners in personam, however, is not dependent upon ability to maintain a proceeding in rem because of the maritime tort. A maritime lien may not exist in a cause of collision, for instance, when the thing occasioning the tort was not the subject of a maritime lien (The Rock Island Bridge [1867] 6 Wall. 213, 18 L. Ed. 753); or such a lien, if it exist, may not be enforceable, and so may be said to render the offending thing not the subject of a maritime lien, because of the ownership and possession of such thing being in the government of the nation (The Siren [1868] 7 Wall. 152, 19 L. Ed. 129); or the remedy in rem may not be available owing to the offending thing being actually in another country, or because of its loss intermediate the collision and the institution of legal proceedings. A recovery can be had in personam, however, for a maritime tort when the relation existing between the owner and the master and crew of the vessel at the time of the negligent collision was that of master and servant. Thorp v. Hammond (1870) 12 Wall. 408, 20 L. Ed. 419; The Plymouth (1865) 3 Wall. 35, 18 L. Ed. 125."

As I understand the scope of this authority, it is as fatal to the defense of ultra vires as to the defense that the servant is exercising a governmental function of the city. In both cases the servant acts by the direction of the master, and in a court of admiralty this is sufficient to establish the master's liability, whether or not the direction be ultra vires.

In the present controversy it is not denied that those in charge of the ice boat were servants of the city, and as such servants were managing and operating the boat in discharge of their duty. The relation of master and servant existed, therefore, although it may be assumed (without deciding the point) that the purpose for which the boat was being used was not within the corporate powers of the city. Upon the reasoning above referred to, the respondent is responsible in a court of admiralty, even if the order to the offending servant transcended the city's charter authority.

The libelant is entitled to a decree. If the parties cannot agree upon the amount of damage, a commissioner will be appointed to take testimony upon this subject.